No. 94-227

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JACK J. HALVERSON,

Plaintiff and Respondent,

-v-

SHIRLEY J. TURNER and
HAROLD TURNER,

Defendants and Appellants.



FILED

DEC 1 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffrey T. Renz, Missoula, Montana

For Respondent:

James R. Halverson, Herndon, Hartman, Sweeney &
Halverson, Billings, Montana

Submitted on Briefs:  August 25, 1994

Decided:  December 1, 1994

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendants appeal the Order of the District Court of the Thirteenth Judicial District, Yellowstone County, which granted plaintiff's motion for summary judgment declaring that Dahlia Halverson, predecessor in interest of both parties' tracts, had created an easement across defendants' property by reservation and necessity for purposes of ingress and egress. The District Court also denied defendants' subsequent Motion to Reconsider, Amend or Vacate the summary judgment order. We affirm.

We restate the issues as follows:

I. Did the District Court err by finding that Dahlia Halverson created an easement when she conveyed a portion of her property to defendants?

II. Did the District Court err in determining that the easement over defendants' property was not extinguished by defendants' actions in keeping a fence in place across the access location?

The two adjacent properties owned by plaintiff Jack Halverson and Shirley J. and Harold Turner (Turners) were once owned by Dahlia Halverson, the mother of Jack Halverson and Shirley Turner. In 1963, Dahlia Halverson filed and recorded Certificate of Survey No. 646 (COS 646) establishing a subdivision located in an area of Yellowstone County known as the Blue Creek area. The tracts from COS 646 with which we are concerned were known as Tract B-1 and Tract B-2. Tract B-2 bordered Tract B-1 on its eastern boundary line.

2

Dahlia Halverson transferred title to Tract B-2 to Jack Halverson, who in turn recorded a Certificate of Survey (COS) dividing Tract B-2 into Tract B-2A, which was the northern portion, and B-2B, which was the southern portion. In 1982, Halverson reconveyed Tract B-2A to Dahlia Halverson, who still owned Tract B-1, the adjoining tract. In May of 1987, Dahlia Halverson recorded Certificate of Survey No. 646 2nd Amd. (Amended Tract B-1A), which is referred to as COS 646, 2nd Amd. COS 646, 2nd Amd. divided Tract B-1 (also referred to as B-1A) into two tracts with the northern tract called Tract B1A-1 and the southern tract called Tract B1A-2. COS 646, 2nd Amd. also showed a 30-foot road easement extending from the northeast corner of Tract B1A-1 westerly for a distance of 188.52 feet. This easement was to provide access to a street running to the north from the northerly boundary line of Tract B1A-1.

In June 1987, Dahlia Halverson transferred Tract B1A-1 to Shirley Turner by quitclaim deed, which described the tract as follows:

> Tract B1A-1 of Amended Tract B-1A CERTIFICATE OF SURVEY NO. 646, 2nd Amd., Yellowstone County, Montana, according to the official plat thereof on file and of record in the office of the Clerk and Recorder of said County, under Document No. 1442776.

On August 30, 1991, Dahlia Halverson's estate transferred ownership of Tract B-2A back to Jack Halverson. COS 646, 2nd Amd. shows a 30-foot road easement at the northern edge of Tract B1A-1 presently owned by the Turners to allow access to Tract B-2A presently owned by Halverson. Without the easement shown on COS 646, 2nd Amd., Tract B-2A is landlocked. Following is a diagram

3

which illustrates the relevant tracts as well as the easement claimed by Jack Halverson over Tract B1A-1:

```
                                                      _____(fence)
                      30' easement
                      ------------------
                          188.52'

    N         Tract B1A-1              Tract B-2A
              3.160 Acres Gr.
              3.030 Acres Net

    S         _____

              Tract B1A-2              Tract B-2B
```

At all times pertinent to this action, the northern edge of Tract B1A-1 has been fenced. The easement in question, which has never been used by either Dahlia Halverson or Jack Halverson, would of necessity have to pass through a point where the existing fence is located on the northern boundary of Tract B1A-1. Sometime in 1992, the Turners caused another fence to be erected on the eastern boundary of their property which borders Halverson's Tract B-2A. No suggestion was ever made prior to the erection of this fence in 1992 that there was no valid road easement over B1A-1 to access Halverson's property. Halverson brought this action to judicially establish the existence of a road easement over the Turners' property. The District Court granted summary judgment to Jack Halverson, determining that an easement was established by Dahlia Halverson when she conveyed Tract B1A-1 to the Turners in June of 1987.

Our standard for reviewing a grant of summary judgment is the same as that used by the district court. Wild River Adventures, Inc. v. Board of Trustees (1991), 248 Mont. 397, 399-400, 812 P.2d

4

344, 345. Summary judgment is proper when there are no genuine issues of material fact, as in this case. Rule 56(c), M.R.Civ.P. The parties agree on the material facts of this case. Therefore, our review is limited to a determination of the law applicable to the facts.

## ISSUE I

Did the District Court err by finding that Dahlia Halverson created an easement when she conveyed a portion of her property to defendants?

The District Court determined that Dahlia Halverson created an easement by reservation when she quitclaimed Tract B1A-1 to Shirley Turner in 1987 by making reference to COS 646, 2nd Amd. The court further stated that when Jack Halverson received Tract B-2A from the Estate of Dahlia Halverson, he also received the easement in favor of Tract B-2A over Tract B1A-1.

The June 1987 quitclaim deed from Dahlia Halverson to Shirley Turner referred to COS 646, 2nd Amd., as above-mentioned, and included in that reference Document No. 1442776, under which the COS had been recorded. COS 646, 2nd Amd. clearly shows the 30-foot road easement, 188.52 feet in length from east to west across Tract B1A-1. No other easements are shown on this document.

The purpose of a land description which is a necessary inclusion in an instrument conveying title is to describe the land so that the extent of the claim to the property may be determined. See City of Missoula v. Mix (1950), 123 Mont. 365, 383-84, 214 P.2d 212, 222. A reference to a map or plat is generally included to express, confirm, or amplify a description. 1 M. Friedman, Contracts and Conveyances of Real Property § 4.9(1) (5th ed. 1991).

5

Although the description of the property *being conveyed by the* quitclaim deed in this case contains no language expressly reserving an easement to Dahlia Halverson, it does refer to Tract B1A-1 of COS 646, 2nd Amd. and includes the document number for that COS.

An easement by reservation must arise from the written documents of conveyance. In determining the existence of an easement by reservation in documents of conveyance, it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity. Graham v. Mack (1985), 216 Mont. 165, 174, 699 P.2d 590, 596. In this case, the reference in the quitclaim deed to Document No. 1442776 gave notice to Shirley Turner that the property was being conveyed pursuant to a particular recorded document. It also put her on "inquiry notice" of the easement and the need for a reservation of a way of ingress and egress. "Knowledge of the existence of a claim will be imputed to a party who has sufficient information to put it on inquiry notice of that claim." Benson v. Pyfer (1989), 240 Mont. 175, 180, 783 P.2d 923, 926.

Although the District Court's Order did not allude to an easement by operation of law, Jack Halverson's motion for summary judgment contended that an easement was created by operation of law, according to § 76-3-304, MCA, which provides in pertinent part:

> Where lands are conveyed by reference to a plat, the plat itself or any copy of the plat properly certified by the county clerk and recorder as being a true copy thereof shall be regarded as incorporated into the instrument of conveyance and shall be received in evidence in all courts of this state.

6

Pursuant to § 76-3-304, MCA, reference in documents of conveyance to a plat which describes an easement establishes the easement. Benson, 783 P.2d at 925. Moreover, according to § 76-3-304, MCA, when land is sold with reference to a properly recorded plat, that plat becomes part of the document conveying the interest in the land.

While the deed to Shirley Turner referred to COS 646, 2nd Amd., it also stated "according to the official plat thereof on file and of record . . . under Document No. 1442776." Under the provisions of the Montana Subdivision and Platting Act, §§ 76-3-101 to -614, MCA, there is a significant difference between certificates of survey and plats, although both "certificates of survey" and "official plats" are filed in the office of the clerk and recorder. We do not conclude that the distinction between "official plats" and "certificates of survey" is controlling here. While the term "official plat" was used in the above description, the tract is described as being Tract B1A-1 of the COS under Document No. 1442776. The description is sufficient to accurately refer to the COS even though the term "plat" is incorrectly used. We conclude that the reference in the document of conveyance to a recorded COS which adequately described the easement was sufficient to establish the easement.

This Court's recent opinion in Bache v. Owens (Mont. 1994), ___ P.2d ___, 51 St.Rep. 1001, held that documents of conveyance which incorporated a COS by reference established an easement in favor of the grantors as described in the COS. Our conclusion in this case is consistent with the Bache holding that the

incorporation of a COS was sufficient to establish an easement.

Dahlia Halverson had an amended COS prepared pursuant to her division of Tract B-1A into two smaller tracts. She recorded the COS prior to her conveyance of Tract B1A-1 to Shirley Turner. Her conveyance of this tract to Shirley Turner included a land description and a reference to the recorded Second Amended COS 646 as required by Montana law. Dahlia Halverson created an express easement of reservation for Tract B2-A over Tract B1A-1 when she conveyed Tract B1A-1 to Shirley Turner and retained Tract B-2A. This easement runs with the land, was not personal to Dahlia Halverson and, therefore, entitles Jack Halverson, as successor in interest of Tract B-2A, to the benefit of the easement.

We hold that the District Court correctly concluded that Dahlia Halverson created an easement when she conveyed a portion of her property to defendants.

### ISSUE II

Did the District Court err in determining that defendants' actions in keeping a fence in place across the northern boundary of Tract B1A-1 did not extinguish the easement over defendants' property?

The easement over the Turners' property has never been improved and has not been used. The Turners contend that any easement created in favor of Tract B-2A has since been extinguished by adverse possession. Jack Halverson contends that he was unaware that the Turners contested the easement until the 1992 construction of another fence on the boundary between Tracts B1A-1 and B-2A. At that time, Halverson objected to the new fence and then learned that the Turners contested his easement.

The Turners, however, contend that by keeping and maintaining

8

the fence on the northern boundary of their property since Shirley Turner acquired the property in 1987, the easement has continuously been blocked by the fence. The District Court did not find their maintenance of this fence sufficiently adverse to Jack Halverson's dominant tenement.

Extinguishment of an easement through adverse use by the owner of the servient tenement is determined by applying the principles that govern acquisition of title by adverse possession and acquisition of an easement by prescription: open, notorious, exclusive, adverse, continuous and uninterrupted use for the full statutory period. Shors v. Branch (1986), 221 Mont. 390, 398, 720 P.2d 239, 244; Warnack v. Coneen Family Trust (Mont. 1994), 879 P.2d 715, 723, 51 St.Rep. 739, 744. A permanent easement by express reservation which is not used is not lost by prescription during a period of nonuse no matter how long it remains unused unless there is adverse use which is clearly inconsistent with the dominant tenement's future use of the easement. City of Billings v. O. E. Lee Co. (1975), 168 Mont. 264, 268, 542 P.2d 97, 99. Moreover, the owner of the dominant tenement is not required to make use of the easement as a condition to retaining his interest in the easement. Billings, 542 P.2d at 99. Thus, where an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence the land and this will not be deemed adverse until such time as the need for the right-of-way arises and the owner of the dominant tenement demands that the easement be opened and the servient tenement owner refuses to do so. City of Edmond v. Williams (Wash. App. 1989), 774 P.2d 1241,

9

1244, citing Castle Assocs. v. Schwartz (N.Y.1978), 407 N.Y.S.2d 717, 723.

Prior to erecting the boundary fence between the parties' property, both tracts were apparently used as a common pasture. The District Court correctly concluded that the maintenance of the northern boundary fence was not an adverse use and that the newly-constructed fence between the properties at most impeded the use of the easement for a little less than two years. Therefore, the Turners' claim that the easement was extinguished fails.

We hold the District Court correctly determined that defendants' actions in keeping a fence in place across the northern boundary of Tract B1A-1 did not extinguish the easement over defendants' property.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice Karla M. Gray, specially concurring.

I specially concur in the Court's opinion. My disagreements and concerns over the Court's approach were set forth fully and recently in my dissent in Bache v. Owens (Mont. 1994), ___ P.2d ___, 51 St.Rep. 1001. They need not be repeated here; suffice it to say that those disagreements and concerns have not decreased.

Having failed to persuade a majority of the Court of my views in Bache, however, that decision is now the applicable law. For that reason, and that reason alone, I specially concur in the Court's opinion in this case.

_____
Justice