No. 00-434

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 23N

JOHN L. CRAVATH, ET AL.,

Plaintiffs and Respondents,

v.

GEORGE ELLINGSON, ET AL.,

Defendants and Appellants.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Richard DeJana, Richard DeJana & Associates, PLLC, Kalispell, Montana

For Respondents:

Michael A. Ferrington, Attorney at Law, Whitefish, Montana

Submitted on Briefs: September 28, 2000
Decided: February 15, 2001

Fiiled:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Gregory Ellingson, et al., appeal from an order of the Eleventh Judicial District, Flathead County, granting summary judgment in favor of the plaintiffs John L. Cravath, et al., and denying Ellingson's motion for partial summary judgment.

¶3 We reframe the issues raised on appeal as solely one issue: whether the District Court erred in granting summary judgment to Cravath and denying partial summary judgment to Ellingson. We affirm.

## BACKGROUND

¶4 John L. Cravath and other plaintiffs (hereinafter Cravath) instituted this action in 1994, when they discovered that defendants were attempting to restrict access to community lakefront property that had been previously accessible to members of the Rest Haven subdivision in Flathead County.

¶5 Cravath and other plaintiffs own real property in the Rest Haven subdivision, more specifically described in a July 18, 1966, document referred to as the "Penwell Agreement." This document, signed by the original developers of the subdivision, G. Norman Penwell and Kathryn Jean Penwell, gives notice of the development of a subdivision and describes the water system in the subdivision. Also within the Penwell Agreement is a description of a "community access" reservation that would allow all members of the subdivision access to 150-200 feet of waterfront property. Specifically, the Agreement states,

> "THE UNDERSIGN [sic] DO HEREBY FURTHER AGREE AND COVENANT with any and all persons or corporations who now or shall hereafter acquire any interest in and to the above described property that the undersign [sic] will provide within the above described property and within the boundaries of Lot 16 of Rest Haven, Flathead County, Montana, pending a public dedication of the same, 150 to

200 feet of lake frontage as a common access said persons or corporations for recreational purposes only for themselves and personal guests for small social functions, boat dockage or motoring, but without right to alter, remodel, build or construct any facilities of any nature on any of said premises without the written consent of the undersign [sic], and without right to exclude the use of same at any time by any other person or corporation who now or shall hereafter acquire any interest in and to the above described property."

¶6 A document entitled Deed Exhibit 273, apparently filed for record on August 18, 1966, sets forth a specific description of a local community access/beach area.

¶7 Defendants George F. Ellingson, et al., (Ellingson) own real property in the Rest Haven subdivision which encompasses the community access location. Ellingson contends that Cravath has no right to use the so-called "community access" previously recorded in the Penwell Agreement and the Deed Exhibit 273. Ellingson claims that a document signed on March 27, 1974, by the Penwells when they transferred their interest in the subdivision to Montana-Pacific, referred to as the "Penwell Affidavit," released all covenants on the subdivision property, including the right to use the contested community access location. Apparently, an amended survey map was recorded on January 12, 1989, contradicting the description set forth within Deed Exhibit 273.

¶8 On December 21, 1995, Ellingson moved for partial summary judgment and on February 5, 1996, Cravath moved for summary judgment. The District Court entered its Opinion, Judgment, and Decree Quieting Title, denying Ellingson's motion for partial summary judgment and granting Cravath's motion for summary judgment on April 26, 2000. The court concluded that there was no genuine issue of material fact, and the plaintiffs were entitled to judgment as a matter of law as to the validity of the community access as reflected in the terms of the 1966 Penwell Agreement and the Deed Exhibit 273.

## DISCUSSION

¶9 Did the District Court err in granting summary judgment to Cravath and denying summary judgment to Ellingson?

¶10 We review appeals from summary judgment rulings de novo. *Motarie v. Northern Mont. Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156. Therefore, this Court reviews an order granting summary judgment based on the same

criteria applied by the district court pursuant to Rule 56, M.R.Civ.P. *Motarie*, 274 Mont. at 242, 907 P.2d at 156.

¶11 Summary judgment should not be granted if there is any genuine issue of material fact. Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Motarie*, 274 Mont. at 242, 907 P.2d at 156. The party seeking summary judgment must establish, in light of the pleadings and other evidence before the court, the absence of any genuine issue of material fact which would entitle the non-moving party to recover. *See Clark v. Eagle Systems, Inc*. (1996), 279 Mont. 279, 283, 927 P.2d 995, 997-98. Once the party seeking summary judgment meets this burden, the non-moving party must come forward with substantial and material evidence raising a genuine issue of material fact. *See Clark,* 279 Mont. at 283, 927 P.2d at 998.

¶12 Cravath contends that the District Court properly granted summary judgment in its favor when it upheld the validity of the July 18, 1966, Penwell Agreement and Deed Exhibit 273. Ellingson contends that the District Court erred. First, Ellingson contends that the Penwell Agreement failed to initially create any legal access right. In addition, Ellingson contends that if any access right existed, it is a covenant to the land, and thus was relinquished by the Penwell Affidavit.

¶13 When it appears from the clear terms of a grant that the grantor intends to reserve a right that is in the nature of a servitude or easement, regardless of the form in which the purpose is expressed, whether it be condition, covenant, reservation, or exception, if the right is not against public policy, such right will be held to be appurtenant to the land of the grantor, binding on that conveyed to grantee, and will pass with the land to all subsequent grantees. *See City of Missoula v. Mix* (1950), 123 Mont. 365, 374, 214 P.2d 212, 216-17. The July 18, 1966, Penwell Agreement demonstrates a clear intent by the developer to create a community access area for the owners of the parcels set forth in the agreement. As the District Court correctly concluded, the language of the Penwell Agreement indicates that the community access or recreation area was intended to be irrevocable, akin to an easement, within the subdivision, and that the Penwells fully intended to create a community access area.

¶14 In concert with the Penwell Agreement, Deed Exhibit 273 was apparently filed for record on August 18, 1966. The Deed Exhibit clearly sets forth an unambiguous description of the location and size of the community access area. Easements created

through survey maps such as the community access described within Deed Exhibit 273, satisfy the requirements that an easement be created by a written document. *See Halverson v. Turner* (1994), 268 Mont. 168, 172-73, 885 P.2d 1285, 1288; *Bache v. Owen* (1994), 267 Mont. 279, 284, 883 P.2d 817, 820; *see also* § 76-3-304, MCA. Both the Penwell Agreement and Deed Exhibit 273 clearly provide for a community access area. *See Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶¶ 19-21, 298 Mont. 52, ¶¶ 19-21, 993 P.2d 688, ¶¶ 19-21.

¶15 After reviewing the relevant documents, we conclude that the community access area as created by the Penwell Agreement and as depicted in Deed Exhibit 273, is not a covenant that can be released by affidavit. The language in the Penwell Agreement states that "and without right to exclude the use of same at any time by any other person or corporation who now or shall hereafter acquire any interest in and to the above described property." There is no language in the Penwell affidavit that shows an intent to relinquish the community access rights. Additionally, although the Penwell Affidavit releases all covenants, it does not release any public roads and rights-of-way. Such right of way reasonably includes the term community access as specifically defined in both the Penwell Agreement and the Deed Exhibit 273.

¶16 Ellingson makes several further arguments concerning the future rights created by various documents, failure of the District Court to examine plaintiffs' chains of title, and obligations of Ellingson in reference to the Penwell Agreement and the Deed Exhibit 273. Determination that the Penwell Agreement and the Deed Exhibit 273 clearly created the community access, however, renders these arguments moot.

¶17 Thus, Ellingson took title to the Rest Haven property subject to the community access rights set forth in the Penwell Agreement and the Deed Exhibit 273. The amended survey map recorded by defendants on January 12, 1966, violated the terms of the Penwell Agreement, and thus is void. We conclude that the District Court properly granted summary judgment to Cravath.

¶18 AFFIRMED.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART